## THE PICQUA.

(District Court, S. D. New York. October 31, 1899.)

MASTER AND SERVANT—PERSONAL INJURY OF EMPLOYE—NEGLIGENCE—LOADING VESSELS—INDEPENDENT CONTRACTOR.

The hatch of a steamer, through which stevedores were loading it by means of a fall from the boom of a derrick, was 20 feet long, and had across it, to support the covers, two beams, 6 feet from the ends. According to custom, the carpenter, in arriving in port, had removed the bolts which fastened the beams, so that the stevedores might manage the beams as they desired, as for the purpose of loading they had the entire management of the hatches and beams; and, before commencing loading, their foreman had the after beam removed, but left in the forward beam. The derrick was so arranged that the vertical line dropped through the

after part of the hatch, but D. and co-laborers, working for the stevedores in the hold, not being able to move forward as far as desired a cask which had been lowered, and was somewhat forward of the hatch, attached the fall thereto, and gave the signal to raise it, execution of which brought the rope against the forward beam and threw it from its place onto D. *Held*, that there was no improper equipment of the ship, or fault on its part, but any negligence was that of D., his co-laborers, and the foreman of the stevedores, all fellow servants.

In Admiralty.

George W. Bristol, for libelant.

Convers & Kirlin, for claimant.

BROWN, District Judge. In the afternoon of August 29, 1898, the libelant, a longshoreman in the employ of stevedores loading the steamship Picqua, while stowing some casks of tobacco in the lower hold was seriously injured by the fall of an athwartship iron beam, which became dislodged from the hatch above him. The libel was filed to recover compensation for his injuries, on the ground that the ship was not properly equipped, in not having the above beam securely fastened, and that the stevedores, Phelps Bros., were the agents of the ship in doing the stevedore's work.

The hatch in question was about 20 feet long, fore and aft, across which were two athwartship iron beams, used to support the hatch covers. The cargo was being lowered into the hold by means of a fall from the boom of the derrick so arranged that the vertical line dropped through the after part of the hatch. The after beam had been removed, but the forward beam which was about 6 feet from the forward end of the hatch, had not been removed. The libelant and his co-laborers, not being able to move a cask that had been lowered into the hold as far forward of the hatch as they desired to move it, attached the fall to the cask, which lay somewhat forward of the hatch opening, and gave the signal to raise it up. For the purpose of attaching the fall to the cask, the lower end of the fall had been carried forward so as to be considerably out of the vertical line, in consequence of which the rope rubbed against the side of the forward athwartship beam above, and thence descended upon an incline forward; so that when the load began to be hoisted up, the beam, which rested in a slot in the sides of the hatch, was raised out of the slot and fell.

There is no doubt that it was gross carelessness to attempt to raise a load by a fall running in that way against a loose beam in the hatch; but I do not think that the ship was in any way responsible or to blame for this act. The management of the hatches and of the beams for the purpose of loading, as the evidence shows, was entirely in charge of the stevedores. Neither the master nor any of the ship's officers had anything to do with them. When at sea, such beams are usually bolted; but in port it is a common practice for the carpenter to remove the bolts so that the stevedores may manage the athwartship beams as they desire, whether they wish to have the whole hatch free, or so much of it as they find necessary. Before the stevedores began work in this hatchway the foreman directed the removal of the after beam only, leaving abun-

dant room, nearly 14 feet clear, for lowering the cargo by the fall through the space aft of the beam that was left. There evidently was no expectation of using the fall in such a way as the libelant made use of it, by carrying it forward so as to rub hard against the forward beam. There was certainly no defect in the ship's equipment, nor was it any fault of the ship that the carpenter removed the bolts in order that the stevedore might remove the beams as desired.

There is some testimony that the attention of the foreman was called to the fact that the forward beam was left in, and that it was insecure; and it is further sought to hold the ship on the ground that her agents, Phelps Bros., did the stevedoring, and that this was done as agents in her behalf. They were, indeed, the agents of the ship in this port. The vessel was owned by a corporation, in which Phelps Bros. had also a considerable interest as stockholders. But the business of stevedoring is no part of the duties of ship's agents as such, express or implied. Phelps Bros. did the stevedoring at fixed rates specified by contract with the owners. It is not an uncommon thing in this port for ship's agents to do, or to be interested in, the stevedoring for the vessel; but this is altogether an independent employment and a separate subject of contract, wholly outside of the rights or duties of ship's agents; and for any negligence in the stevedoring work the ship in such a case is no more responsible than if the stevedoring were done by other and wholly independent persons. Some passages in the master's testimony on this point have been misinterpreted in the libelant's behalf, and construed erroneously as meaning that the stevedoring was done by Phelps Bros. on account of the owners as principals in doing the work. Phelps Bros. in this respect, however, stood wholly as independent contractors; the stevedoring, as I have said, being no part of their agency, but being done by virtue of their contract arrangement with the owners. Whatever negligence there was in this matter was, therefore, the negligence of the foreman of the stevedores and of the libelant himself in making use of the fall as he did; and as this negligence was between fellow workmen, it follows that the libel should be dismissed. See Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, and cases there cited.